FILED

1  JOAN ELIZABETH
   E-Mail: aarestadj@earthlink.net
2  556 S. Fair Oaks Avenue, Suite # 101-223
   Pasadena, California 91105-2656
3  (626) 449-1400 (Telephone)
   (626) 449-9880 (Facsimile)
4
   IN PRO SE
5

2010 FEB 16  PM 2: 2

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

6

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9

10

11  JOAN ELIZABETH,                    )   Case No. 08-CV-6028 PA (JWJx)
                                       )
12              Plaintiff,             )   **PLAINTIFF'S UNDERLINED**
                                       )   **PROPOSED FINDINGS OF FACT**
    vs.                                )   **AND CONCLUSIONS OF LAW**
13                                     )   **SUBMITTED PREVIOUSLY BY**
    FEDERAL DEPOSIT INSURANCE          )   **FDIC**
14  CORPORATION, individually and as   )
    Receiver for INDYMAC BANK,         )   TRIAL DATE: March 9, 2010
15  F.S.B.,                            )   TIME:   8 a.m.
                Defendants.            )   CTRM:   15
16                                     )
                                       )
17

18       Plaintiff Joan Elizabeth submits the following Underlined Proposed Findings

    of Fact and Conclusions of Law Previously Submitted by FDIC on her insurance
19
    determination claim.  Plaintiff has filed her Underlined Proposed Findings of Fact
20
    and Conclusions of Law manually because she does not use the ECF system.
21
         Plaintiff did not receive FDIC's document in either WordPerfect format or
22
    Microsoft Word format.  Rather, plaintiff received a PDF file which she discovered
23
    this morning she could not edit.
24

25
    Dated: February 16, 2010                    _Joan Elizabeth_
26
                                                 Joan Elizabeth, IN PRO SE
27

28

SCOTT H. CHRISTENSEN, admitted *pro hac vice*
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone: (202) 721-4600
Facsimile: (202) 721-4646
Email: christen@hugheshubbard.com

RITA M. HAEUSLER, State Bar No. 110574
ALEX E. SPJUTE, State Bar No. 229796
HUGHES HUBBARD & REED LLP
350 South Grand Avenue, 36th Floor
Los Angeles, California 90071-3442
Telephone: (213) 613-2800
Facsimile: (213) 613-2950
Email: haeusler@hugheshubbard.com

Attorneys for Defendant Federal
Deposit Insurance Corporation

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN ELIZABETH,<br><br>            Plaintiff,<br><br>      v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>            Defendant. | Case No. 08-CV-06028 PA (JWJx)<br><br>[Assigned to Hon. Percy Anderson]<br><br>[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE FEDERAL DEPOSIT INSURANCE CORPORATION'S INSURANCE DETERMINATION |

This proceeding for review pursuant to 12 U.S.C. § 1821(f)(4) of the deposit insurance determination made by the Federal Deposit Insurance Corporation ("FDIC") on accounts owned by Plaintiff Joan Elizabeth Aarestad came on for trial before this Court on March 9, 2010, the Honorable Percy Anderson, District Judge, presiding, and the issues having been duly briefed and tried and a decision having been duly rendered, this Court finds and rules as follows:

///

///

///

1

## FINDINGS OF FACT

1.      On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac Bank, F.S.B. ("IndyMac Bank") and appointed the FDIC as its Receiver ("FDIC Receiver").  (Request for Judicial Notice Ex. A (Office of Thrift Supervision, Order No. 2008-24 (July 11, 2008)) (Docket Entry 37).)

2.      Upon the closure of IndyMac Bank, the FDIC, acting in its Corporate capacity, determined whether the account balances held by each depositor at IndyMac Bank were insured or uninsured and paid the insured deposit balances from the Deposit Insurance Fund consistent with the insurance determinations. *See generally* 12 U.S.C. §§ 1821(a)(4)(B), (f)(1); (*see also* Declaration of Michael Spaid Attaching Administrative Record ("Spaid Decl.") & Exs. A-B (Docket Entry 40)).

3.      The FDIC Receiver sent each depositor with an uninsured deposit account balance a receivership certificate for any uninsured balance.  (*See* Spaid Decl. ¶ 7 & Ex. B (Docket Entry 40).)

4.      The FDIC estimated that the liquidation value of IndyMac Bank's assets would result in uninsured depositors receiving a dividend equal to 50% of their uninsured deposit balances, and as a result, depositors received an advance dividend of 50% of the amount on their receivership certificates.  (*See* Spaid Decl. ¶ 8 (Docket Entry 40).)

5.      Plaintiff had four accounts with IndyMac Bank, F.S.B. prior to its closure on July 11, 2008.  (*See* Spaid Decl. ¶¶ 3-5 & Ex. A (Docket Entry 40).)

6.      After IndyMac Bank closed, the FDIC downloaded the bank's deposit account records maintained by computer, including the computerized account records for Plaintiff's accounts, into the FDIC Receivership Liability System ("RLS"). (*See* Spaid Decl. ¶ 3 & Ex. A (Docket Entry 40).)

7.      The FDIC reviewed the downloaded IndyMac Bank computerized account records in RLS and used these downloaded records in making its insurance determination.  (*See* Spaid Decl. ¶¶ 3-5 & Ex. A (Docket Entry 40).)

2

8.      The FDIC determined that Plaintiff owned four accounts at IndyMac Bank with a total balance of $113,105.15, as follows:

| Account No.[1] | Account Title | Account Balance |
|---|---|---|
| XXXXXX9098 | Joan E. Aarestad ITF J. David Oswalt | $28,232.19 |
| XXXXXX9100 | Joan E. Aarestad ITF J. David Oswalt | $28,232.19 |
| XXXXXX9119 | Joan E. Aarestad ITF J. David Oswalt | $28,232.19 |
| XXXXXX9128 | Joan E. Aarestad ITF J. David Oswalt | $28,232.19 |

(*See* Spaid Decl. ¶ 5 & Ex. A (Docket Entry 40).)

10.     The FDIC determined that all four of Plaintiff's accounts were informal revocable trust accounts.  (*See* Spaid Decl. ¶¶ 3-4 & Ex. A (Docket Entry 40).)

11.     The FDIC determined that all four of Plaintiff's accounts listed Joan E. Aarestad as the sole account owner and J. David Oswalt as the sole beneficiary.  (*See* Spaid Decl. ¶¶ 3-5 & Ex. A (Docket Entry 40).)

12.     The FDIC determined that all but $13,105.15 of Plaintiff's account balances were insured.  (*See* Spaid Decl. ¶¶ 5-6 & Exs. A & B (Docket Entry 40).)

13.     On July 13, 2008, Plaintiff was issued a receivership certificate in the amount of $13,105.15 for the uninsured amount of her account balances, and a subsequent 50% dividend on the receivership certificate in the amount of $6,552.58. (*See* Spaid Decl. ¶ 7 & Ex. B (Docket Entry 40).)

14.     Plaintiff filed this action September 15, 2008 seeking judicial review of the FDIC's insurance determination of her IndyMac Bank accounts.  (*See* Complaint (Docket Entry 1).)

15.     Plaintiff filed a First Amended Complaint on October 15, 2008 seeking judicial review of the FDIC's insurance determination of her IndyMac Bank accounts. (*See* First Amended Complaint (Docket Entry 11).)

---

[1]   All but the last four digits of the account numbers are omitted to protect the personal information of the accountholders.

3

16. The FDIC's insurance determination for Plaintiff's IndyMac Bank accounts is set forth in the administrative record produced by the FDIC in this action and explained in the declaration of Michael Spaid attaching the administrative record. (*See* Spaid Decl. & Exs. A-B (Docket Entry 40).)

## CONCLUSIONS OF LAW

1. In this action, Plaintiff seeks judicial review of the FDIC's deposit insurance determination under 12 U.S.C. § 1821(f). This Court set this action for a court trial to be tried on the administrative record. (September 14, 2009 Order at 1 (Docket Entry 44).)

2. A final determination of the FDIC "regarding any claim for insurance coverage [is] a final agency action reviewable in accordance with chapter 7 of Title 5," also known as the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. 12 U.S.C. § 1821(f)(4).

3. Under the APA, the proper standard of review to be applied by the Court is whether the FDIC's insurance determination was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

4. A decision is arbitrary or capricious under the APA if the FDIC

'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'

*O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

5. The review by this Court under the APA is limited to a review of the administrative record created and compiled by the FDIC. 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party"); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("In applying that standard, the focal point

4

1   for judicial review should be the administrative record already in existence, not some

2   new record made initially in the reviewing court."); *Keller v. CIR*, 568 F.3d 710, 718

3   (9th Cir. 2009) ("However, our review is confined to the record at the time the

4   Commissioner's decision was rendered.").

5      6. The administrative record produced by the FDIC, as well as the

6   explanatory declaration of Michael Spaid, adequately set forth the deposit account

7   records upon which the FDIC relied in rendering its insurance determination, and is

8   sufficient for judicial review by this Court under the APA.

9      7. The FDIC's insurance determination is controlled by the applicable

10  federal regulations and the clear books and records of IndyMac Bank, not state law.

11  12 C.F.R. § 330.3(h) (2008) ("Deposit insurance coverage is also a function of the

12  deposit account records of the insured depository institution and of the provisions of

13  this part, which, in the interest of uniform national rules for deposit insurance

14  coverage, are controlling for purposes of determining deposit insurance coverage.");

15  *see Villafane-Neriz*, 75 F.3d at 731 (holding that the FDIC "is entitled to rely on the

16  account records of the failed institution," and that "while ownership under state law is

17  one prerequisite for insurance coverage, the deposit account records are controlling");

18  *Metro County Title, Inc. v. FDIC*, 13 F.3d 883, 886-87 (5th Cir. 1994) ("state law

19  presumptions do not displace the federal conclusive account records doctrine");

20  *Nimon v. RTC*, 975 F.2d 240, 246 (5th Cir. 1992) (Where "the account records are

21  clear and unambiguous, their statement of the capacity in which funds are owned is

22  conclusive.").

23     8. When determining insurance coverage for deposit accounts at a

24  closed bank, the FDIC is entitled to rely on the deposit account records of the failed

25  bank at the time it closed. 12 C.F.R. § 330.5(a)(1) (2008). Those deposit account

26  records include "books and records of the insured depository institution, including

27  records maintained by computer, which relate to the insured depository institution's

28  deposit taking function." 12 C.F.R. § 330.1(e) (2008).

5

9.   Except in limited circumstances that do not apply here, in determining the amount of insurance available to each depositor, the FDIC shall presume that deposited funds are actually owned in the manner indicated on the deposit account records of the insured depository institution. If the FDIC, in its sole discretion, determines that the deposit account records of the insured depository institution are clear and unambiguous, those records shall be considered binding on the depositor, and the FDIC shall consider no other records on the manner in which the funds are owned.

12 C.F.R. § 330.5(a)(1) (2008); *see also Villafane-Neriz v. FDIC*, 75 F.3d 727, 731-32 (1st Cir. 1996) (holding that the FDIC "is entitled to rely exclusively on the account records of the failed institution").

10.   If the FDIC determines the bank records it reviews to be clear and unambiguous as to the ownership of a depositor's accounts, the FDIC may rely on the records even if the records reflect a mistake or unauthorized activity. 12 C.F.R. § 330.5(a)(1); *see Raine v. Reed*, 14 F.3d 280, 283-84 (5th Cir. 1994) (noting that "[e]ven where the bank itself has committed a mistake" the FDIC may rely on the clear records to determine if a deposit is insured); *In re Collins Sec. Corp.*, 998 F.2d 551, 555 (8th Cir. 1993) (explaining that the FDIC can rely on bank records, even if they contain a mistake, because "[d]eposit insurance protects depositors from loss due to the bank's insolvency, not loss from the bank's pre-insolvency mistake"); *see also Villafane-Neriz*, 75 F.3d at 733 (collecting cases).

11.   The FDIC reviewed and relied upon IndyMac Bank ~~deposit~~ account records maintained by computer and downloaded into RLS, and concluded that those records clearly and unambiguously reflect the account ownership of Plaintiff's IndyMac Bank accounts and the balances of those accounts. *See* 12 C.F.R. § 330.5(a)(1); *Merrill Lynch Mortg. Capital, Inc. v. FDIC*, 293 F. Supp. 2d 98, 104 n.2 (D.D.C. 2003) ("[12 C.F.R. § 330.5(a)(1)] also allows FDIC nearly total discretion in what evidence it will or will not consider in determining account ownership."); *see also* Large-Bank Deposit Insurance Determination Modernization Proposal, 71 Fed. Reg. 74,857, 74,858 (Dec. 13, 2006); Large-Bank Deposit Insurance Determination

6

1   Modernization Proposal, 70 Fed. Reg. 73,652, 73,655 (Dec. 13, 2005).  The FDIC's

2   determination that IndyMac Bank's deposit account records regarding Plaintiffs'

3   accounts are clear and unambiguous was not arbitrary or capricious or otherwise not

4   in accordance with the law.  *See* 12 C.F.R. § 330.5(a)(1).

5          12.    The FDIC's determination that all four of Plaintiff's accounts at

6   IndyMac Bank listed Joan E. Aarestad as the sole owner and J. David Oswalt as the

7   sole beneficiary was not arbitrary or capricious or otherwise not in accordance with

8   the law, and was a determination made within the FDIC's sole discretion.  *See* 12

9   C.F.R. § 330.5(a)(1).

10         13.    Informal revocable trust accounts, commonly known as "payable

11  on death" accounts, "in trust for" accounts, or "Totten trust" accounts, are created

12  when the account owner sets up the account so that the funds are payable to one or

13  more beneficiaries upon the owner's death.  *See* 12 C.F.R. §330.10(b) (2008).

14         14.    Informal revocable trust accounts must be titled to include a

15  commonly accepted term such as "payable on death," "in trust for," "as trustee for" or

16  similar language to indicate the existence of a trust relationship, and such terms may

17  be abbreviated as "POD," "ITF," or "ATF."  *See* 12 C.F.R. § 330.10(b) (2008).

18         15.    The FDIC's determination that Plaintiff's four accounts at

19  IndyMac Bank were all titled "Joan E. Aarestad ITF J. David Oswalt," and that these

20  accounts were therefore informal revocable trust accounts, was not arbitrary or

21  capricious or otherwise not in accordance with the law, and was a determination made

22  within the FDIC's sole discretion.  *See* 12 C.F.R. § 330.10 (2008).

23         16.    While the trust owner is the insured party, insurance coverage is

24  provided for the interests of each beneficiary of the account up to the allowed

25  maximum insured amount, which at the time of IndyMac Bank's closure was

26  $100,000, for each owner-beneficiary relationship across all accounts at IndyMac

27  Bank.  *See* 12 C.F.R. § 330.10(a) (2008).

28         17.    The FDIC's determination that the relationship between Plaintiff,

                                          7

1  as account owner, and Mr. Oswalt, as the sole beneficiary, was insured up to $100,000

2  for this owner-beneficiary relationship across all accounts at IndyMac Bank, was not

3  arbitrary or capricious or otherwise not in accordance with the law, and was a

4  determination made within the FDIC's sole discretion. *See* 12 C.F.R. § 330.5(a)(1).

5        18.    The FDIC's determination that Plaintiff held a total of $113,105.15

6  in revocable trust accounts with Mr. Oswalt as a beneficiary, which was $13,105.15

7  over the deposit insurance limit, was not arbitrary or capricious or otherwise not in

8  accordance with the law, and was a determination made within the FDIC's sole

9  discretion.

10        19.    The FDIC's determination that $13,105.15 of the deposit balances

11  in Plaintiff's Account Nos. 9098, 9100, 9119, and 9128 was considered uninsured is

12  therefore in accordance with law and supported by the evidence upon which the FDIC

13  is entitled to rely. *See generally* 5 U.S.C. § 706(2)(A); *O'Keeffe's, Inc.*, 92 F.3d

14  at 942.

15

16  Dated: _____          _____

17                                          Hon. Percy Anderson
                                 United States District Judge

18  Submitted by:

19  SCOTT H. CHRISTENSEN, admitted *pro hac vice*
HUGHES HUBBARD & REED LLP
20  1775 I Street, N.W.
Washington, D.C. 20006-2401
21  Telephone: (202) 721-4600
Facsimile: (202) 721-4646
22  Email: christen@hugheshubbard.com

23  RITA M. HAEUSLER, State Bar No. 110574
ALEX E. SPJUTE, State Bar No. 229796
24  HUGHES HUBBARD & REED LLP
350 South Grand Avenue, 36th Floor
25  Los Angeles, California 90071-3442
Telephone: (213) 613-2800
26  Facsimile: (213) 613-2950
Email: haeusler@hugheshubbard.com

27

28  Attorneys for Defendant Federal
Deposit Insurance Corporation

1   Dated: February 8, 2010

2

3                                        HUGHES HUBBARD & REED LLP

4

5                                        By:

6                                              Scott H. Christensen

7                                       Attorneys for Defendant Federal

8                                       Deposit Insurance Corporation

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE FDIC'S INSURANCE DETERMINATION
60921908_1

## DECLARATION OF SERVICE BY MAIL

At the time of service I was at least 18 years of age and not a party to this action.  On February 16, 2010, I placed a true and correct copy of **PLAINTIFF'S UNDERLINED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED PREVIOUSLY BY FDIC** for collection and mailing on that date with the U.S. Postal Service, following my ordinary practice, in a sealed envelope, with postage fully prepaid, addressed as follows:

> RITA M. HAEUSLER
> ALEX E. SPJUTE
> HUGHES HUBBARD & REED LLP
> 350 South Grand Avenue, 36th Floor
> Los Angeles, California 90071-3442

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed in Pasadena, California on February 16, 2010.

Ridge Tolbert