UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN ELIZABETH,<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>        Defendant. | CV 08-6028 PA (JWJx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac Bank, F.S.B. ("IndyMac") and appointed the Federal Deposit Insurance Corporation ("FDIC") as the bank's receiver pursuant to 12 U.S.C. § 1821(c)(2)(A). That same day, the FDIC formed IndyMac Federal Bank, a newly chartered depository institution, and transferred IndyMac's insured deposits to it. The FDIC made deposit insurance determinations for accounts held at IndyMac and notified depositors of the determinations via letter. Some depositors, including plaintiff Joan Elizabeth ("Plaintiff"),[1] later filed actions challenging the FDIC's deposit insurance determinations.

---

[1] Apparently for privacy reasons, Plaintiff sued using the name Joan Elizabeth. The accounts at issue were opened by her under the name Joan E. Aarestad.

I.     **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff deposited a total of $100,000 in a series of four certificates of deposit at IndyMac. With interest, Plaintiff's accounts were valued at $113,105.15 when the FDIC took control of IndyMac. At the time, deposits such as Plaintiff's were insured up to a maximum of $100,000. Accordingly, the FDIC determined that $13,105.15 of Plaintiff's funds were over the deposit insurance limit and therefore uninsured. At the time of IndyMac's closure, the FDIC calculated that the ultimate resolution of IndyMac Bank would result in a recovery of approximately 50% of the uninsured deposits. The FDIC therefore credited Plaintiff's account $6,552.58, but Plaintiff lost the remaining $6,552.57 of the $13,105.15 that had been uninsured. Plaintiff contends that the FDIC should have treated the certificates of deposit as accounts held jointly by Plaintiff and her husband and therefore insured for their full value. According to Plaintiff's First Amended Complaint, although Plaintiff had initially requested that the accounts be joint accounts when she first opened them at IndyMac, the bank's employee told her that they could not be opened jointly because Plaintiff's husband was not present. The IndyMac employee told Plaintiff, however, that she could update the account information either online or by telephone. Plaintiff alleges that she later called the bank and added her husband as a joint account holder. Prior to IndyMac's closure, Plaintiff renewed the accounts on several occasions as they matured.

After Plaintiff commenced this action, the FDIC submitted what it contends is the Administrative Record. The Administrative Record consists of two pages of computer records containing information concerning Plaintiff's accounts, a July 13, 2008 letter from the FDIC, and a Receivership Certificate. Accompanying the Administrative Record is a Declaration filed by Michael Spaid, the Manager of the Closings and Deposit Claims Unit within the FDIC's Division of Resolutions and Receiverships. The Spaid Declaration provides an explanation of the information contained in the Administrative Record and details concerning the records the FDIC reviewed and how it made its deposit insurance determinations following the FDIC's takeover of IndyMac.

Dissatisfied with the scope of the Administrative Record, Plaintiff sought leave to conduct discovery concerning the records the FDIC reviewed in reaching its deposit insurance determination. The Court allowed Plaintiff to conduct limited discovery to determine the proper scope of the Administrative Record, but that discovery merely confirmed that the only documents the FDIC considered in making its insurance determination were those included in the Administrative Record. Plaintiff then filed a Motion to Augment the Administrative Record. In the Motion to Augment, Plaintiff sought to include proposed declarations drafted by her, one to be signed by an FDIC official, and the other to be signed by her, which she claimed would provide the Court with "all of the facts relating to [the FDIC's] determination of Plaintiff's insurance claim." Plaintiff also sought to strike the administrative record previously filed by the FDIC. The Court denied Plaintiff's Motion.

The Parties subsequently filed Opening and Responsive Trial Briefs and exchanged proposed Findings of Fact and Conclusions of Law.[2/] At a status conference, during which the Court clarified what it would review during the Court Trial, the parties waived oral argument. Pursuant to that waiver, and consistent with Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The Court Trial calendared for March 9, 2010, is vacated, and the matter taken off calendar. Having considered the materials submitted by the parties and reviewing the evidence, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a):

---

[2/] The Court ordered the parties to review the other side's proposed Findings of Fact and Conclusions of Law and to mark them to indicate the particular factual assertions and legal conclusions they disputed. Plaintiff disputed few of the FDIC's proposed Findings of Fact, and those she did dispute, and which the Court relies upon in reaching its conclusion, are supported by the record. See Docket No. 56.

II. **Findings of Fact**

1. On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac and appointed the FDIC as its Receiver. (Request for Judicial Notice Ex. A (Office of Thrift Supervision, Order No. 2008-24 (July 11, 2008))) (Docket Entry 37).

2. Upon the closure of IndyMac, the FDIC, acting in its Corporate capacity, determined whether the account balances held by each depositor at IndyMac were insured or uninsured and paid the insured deposit balances from the Deposit Insurance Fund consistent with the insurance determinations. See generally 12 U.S.C. §§ 1821(a)(4)(B), (f)(1); see also Administrative Record ("AR"), Exs. A-B (Docket Entry 40).

3. The FDIC sent each depositor with an uninsured deposit account balance a receivership certificate for any uninsured balance. See AR, Ex. B (Docket Entry 40).

4. The FDIC estimated that the liquidation value of IndyMac's assets would result in uninsured depositors receiving a dividend equal to 50% of their uninsured deposit balances, and as a result, depositors received an advance dividend of 50% of the amount on their receivership certificates. See Spaid Decl. 8 (Docket Entry 40).

5. Plaintiff had four accounts with IndyMac prior to its closure on July 11, 2008. See AR, Ex. A (Docket Entry 40).

6. After IndyMac closed, the FDIC downloaded the bank's deposit account records maintained by computer, including the computerized account records for Plaintiff's accounts, into the FDIC's Receivership Liability System ("RLS"). See AR, Ex. A (Docket Entry 40).

7. The FDIC reviewed the downloaded IndyMac computerized account records in RLS and used these downloaded records in making its insurance determination. See Spaid Decl. 3-5 & AR, Ex. A (Docket Entry 40).

8. The FDIC determined that Plaintiff owned four accounts at IndyMac Bank with a total balance of $113,105.15, as follows:

| Account No. | Account Title | Account Balance |
|---|---|---|
| XXXXXX9098 | Joan E. Aarestad ITF J. David Oswalt | $28,232.19 |

|     |     |     |     |
| --- | --- | --- | --- |
| | XXXXXX9100 | Joan E. Aarestad ITF J. David Oswalt | $28,232.19 |
| | XXXXXX9119 | Joan E. Aarestad ITF J. David Oswalt | $28,232.19 |
| | XXXXXX9128 | Joan E. Aarestad ITF J. David Oswalt | $28,232.19 |

See AR, Ex. A (Docket Entry 40).[3]

10. The FDIC determined that all four of Plaintiff's accounts were informal revocable trust accounts. See AR, Ex. A (Docket Entry 40).

11. The FDIC determined that all four of Plaintiff's accounts listed Joan E. Aarestad as the sole account owner and J. David Oswalt as the sole beneficiary. See AR, Ex. A (Docket Entry 40).

12. The FDIC determined that all but $13,105.15 of Plaintiff's account balances were insured. See AR, Exs. A & B (Docket Entry 40).

13. On July 13, 2008, Plaintiff was issued a receivership certificate in the amount of $13,105.15 for the uninsured amount of her account balances, and a subsequent 50% dividend on the receivership certificate in the amount of $6,552.58. See AR, Ex. B (Docket Entry 40).

14. The FDIC's insurance determination for Plaintiff's IndyMac accounts is set forth in the administrative record produced by the FDIC in this action. See AR, Exs. A-B (Docket Entry 40).

III. **Conclusions of Law**

　　A. **Standard of Review**

A final determination of the FDIC "regarding any claim for insurance coverage [is] a final agency action reviewable in accordance with chapter 7 of Title 5," also known as the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. 12 U.S.C. § 1821(f)(4). Under the APA, the reviewing court must affirm the agency's determination unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A decision is arbitrary and capricious if the agency 'has relied on factors which

---

[3]　All but the last four digits of the account numbers are redacted to protect the personal information of the account holder.

1  Congress has not intended it to consider, entirely failed to consider an important aspect of
2  the problem, offered an explanation for its decision that runs counter to the evidence before
3  the agency, or is so implausible that it could not be ascribed to a difference in view or the
4  product of agency expertise.'" O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n, 92
5  F.3d 940, 942 (9th Cir. 1996) (quoting Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto.
6  Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983)).

7        The review by this Court under the APA is limited to a review of the administrative
8  record created and compiled by the FDIC.  5 U.S.C. § 706.  In applying the arbitrary and
9  capricious standard, "the focal point for judicial review should be the administrative record
10 already in existence, not some new record made initially in the reviewing court." Camp v.
11 Pitts, 411 U.S. 138, 142, 93 S. Ct. 1241, 1244, 36 L. Ed. 2d 106 (1973); see also Keller v.
12 CIR, 568 F.3d 710, 718 (9th Cir. 2009) ("However, our review is confined to the record at
13 the time the Commissioner's decision was rendered.").  As the Supreme Court has
14 explained:

15       In all cases agency action must be set aside if the action was
16       "arbitrary, capricious, an abuse of discretion, or otherwise not in
17       accordance with the law" or if the action failed to meet statutory,
18       procedural, or constitutional requirements.  In certain narrow,
19       specifically limited situations, the agency action is to be set aside
20       if the action was not supported by "substantial evidence."

21 Citizens to Improve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-14, 91 S. Ct. 814, 822,
22 28 L. Ed. 2d 136 (1971) (citations omitted) (overruled on other grounds by Califano v.
23 Sanders, 430 U.S. 99, 105, 97 S. Ct. 980, 984, 51 L. Ed. 2d 192 (1977)); Midtec Paper Corp.
24 v. United States, 857 F.2d 1487, 1498 (D.C. Cir. 1988) ("[E]ven where the 'substantial
25 evidence' test applies to agency factfinding, the arbitrary and capricious standard, which
26 always applies as well, performs an additional function.  It authorizes and obliges the
27 reviewing court to guard against an agency's drawing inferences that are 'arbitrary' in
28 relation to the facts found, no matter how substantial may be the support for those facts.").

B. **The FDIC's Deposit Insurance Determination**

1. The Administrative Record produced by the FDIC, as well as the explanatory declaration of Michael Spaid, adequately set forth the deposit account records upon which the FDIC relied in rendering its insurance determination, and is sufficient for judicial review by this Court under the APA.

2. Plaintiff's objections concerning the adequacy of the Administrative Record, and the Court's consideration of the Spaid Declaration are overruled.

3. The FDIC's insurance determination is controlled by the applicable federal regulations and the clear books and records of IndyMac, not state law. 12 C.F.R. § 330.3(h) (2008) ("Deposit insurance coverage is also a function of the deposit account records of the insured depository institution and of the provisions of this part, which, in the interest of uniform national rules for deposit insurance coverage, are controlling for purposes of determining deposit insurance coverage."); see Villafane-Neriz v. FDIC, 75 F.3d 727, 731 (1st Cir. 1996) (holding that the FDIC "is entitled to rely on the account records of the failed institution," and that "while ownership under state law is one prerequisite for insurance coverage, the deposit account records are controlling"); Metro County Title, Inc. v. FDIC, 13 F.3d 883, 886-87 (5th Cir. 1994) ("state law presumptions do not displace the federal conclusive account records doctrine"); Nimon v. RTC, 975 F.2d 240, 246 (5th Cir. 1992) (Where "the account records are clear and unambiguous, their statement of the capacity in which funds are owned is conclusive."). The Court therefore rejects Plaintiff's argument that California's community property laws apply to increase the insurance limit on her accounts above the $100,000 insurance limit.

4. When determining insurance coverage for deposit accounts at a closed bank, the FDIC is entitled to rely on the deposit account records of the failed bank at the time it closed. 12 C.F.R. § 330.5(a)(1) (2008). Those deposit account records include "books and records of the insured depository institution, including records maintained by computer, which relate to the insured depository institution's deposit taking function." 12 C.F.R. § 330.1(e) (2008).

-7-

5.  Except in limited circumstances that do not apply here:

> [I]n determining the amount of insurance available to each depositor, the FDIC shall presume that deposited funds are actually owned in the manner indicated on the deposit account records of the insured depository institution. If the FDIC, in its sole discretion, determines that the deposit account records of the insured depository institution are clear and unambiguous, those records shall be considered binding on the depositor, and the FDIC shall consider no other records on the manner in which the funds are owned.

12 C.F.R. § 330.5(a)(1) (2008); see also Villafane-Neriz, 75 F.3d at 731-32 (holding that the FDIC "is entitled to rely exclusively on the account records of the failed institution").

6.  If the FDIC determines the bank records it reviews to be clear and unambiguous as to the ownership of a depositor's accounts, the FDIC may rely on the records even if the records reflect a mistake or unauthorized activity. 12 C.F.R. § 330.5(a)(1); see Raine v. Reed, 14 F.3d 280, 283-84 (5th Cir. 1994) (noting that "[e]ven where the bank itself has committed a mistake" the FDIC may rely on the clear records to determine if a deposit is insured); In re Collins Sec. Corp., 998 F.2d 551, 555 (8th Cir. 1993) (explaining that the FDIC can rely on bank records, even if they contain a mistake, because "[d]eposit insurance protects depositors from loss due to the bank's insolvency, not loss from the bank's pre-insolvency mistake"); see also Villafane-Neriz, 75 F.3d at 733 (collecting cases).

7.  The FDIC reviewed and relied upon IndyMac deposit account records maintained by computer and downloaded into RLS, and concluded that those records clearly and unambiguously reflect the account ownership of Plaintiff's IndyMac accounts and the balances of those accounts. See 12 C.F.R. § 330.5(a)(1); Merrill Lynch Mortg. Capital, Inc.

1  v. FDIC, 293 F. Supp. 2d 98, 104 n.2 (D.D.C. 2003) ("[12 C.F.R. § 330.5(a)(1)] also allows FDIC nearly total discretion in what evidence it will or will not consider in determining account ownership."); see also Large-Bank Deposit Insurance Determination Modernization Proposal, 71 Fed. Reg. 74,857, 74,858 (Dec. 13, 2006); Large-Bank Deposit Insurance Determination Modernization Proposal, 70 Fed. Reg. 73,652, 73,655 (Dec. 13, 2005). The FDIC's determination that IndyMac's deposit account records regarding Plaintiffs' accounts are clear and unambiguous was not arbitrary or capricious or otherwise not in accordance with the law. See 12 C.F.R. § 330.5(a)(1).

8. The FDIC's determination that all four of Plaintiff's accounts at IndyMac listed Joan E. Aarestad as the sole owner and J. David Oswalt as the sole beneficiary was not arbitrary or capricious or otherwise not in accordance with the law, and was a determination made within the FDIC's sole discretion. See 12 C.F.R. § 330.5(a)(1).

9. Informal revocable trust accounts, commonly known as "payable on death" accounts, "in trust for" accounts, or "Totten trust" accounts, are created when the account owner sets up the account so that the funds are payable to one or more beneficiaries upon the owner's death. See 12 C.F.R. §330.10(b) (2008).

10. Informal revocable trust accounts must be titled to include a commonly accepted term such as "payable on death," "in trust for," "as trustee for" or similar language to indicate the existence of a trust relationship, and such terms may be abbreviated as "POD," "ITF," or "ATF." See 12 C.F.R. § 330.10(b) (2008).

11. The FDIC's determination that Plaintiff's four accounts at IndyMac were all titled "Joan E. Aarestad ITF J. David Oswalt," and that these accounts were therefore informal revocable trust accounts, was not arbitrary or capricious or otherwise not in accordance with the law, and was a determination made within the FDIC's sole discretion. See 12 C.F.R. § 330.10 (2008). Indeed, the FDIC's determination is consistent with Plaintiff's allegation that she originally attempted to open the accounts without her husband's participation, and her failure to provide any account statements or other evidence that she ever actually added her husband to the account prior to IndyMac's closure.

12. While the trust owner is the insured party, insurance coverage is provided for the interests of each beneficiary of the account up to the allowed maximum insured amount, which at the time of IndyMac's closure was $100,000, for each owner-beneficiary relationship across all accounts at IndyMac. See 12 C.F.R. § 330.10(a) (2008).

13. The FDIC's determination that the relationship between Plaintiff, as account owner, and Mr. Oswalt, as the sole beneficiary, was insured up to $100,000 for this owner-beneficiary relationship across all accounts at IndyMac, was not arbitrary or capricious or otherwise not in accordance with the law, and was a determination made within the FDIC's sole discretion. See 12 C.F.R. § 330.5(a)(1).

14. The FDIC's determination that Plaintiff held a total of $113,105.15 in revocable trust accounts with Mr. Oswalt as a beneficiary, which was $13,105.15 over the deposit insurance limit, was not arbitrary or capricious or otherwise not in accordance with the law, and was a determination made within the FDIC's sole discretion.

15. The FDIC's determination that $13,105.15 of the deposit balances in Plaintiff's Account Nos. 9098, 9100, 9119, and 9128 was considered uninsured is therefore in accordance with law and supported by the evidence upon which the FDIC is entitled to rely. See generally 5 U.S.C. § 706(2)(A); O'Keeffe's, Inc., 92 F.3d at 942.

**CONCLUSION**

For the foregoing reasons, the Court finds that the FDIC's deposit insurance determination is supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, the Court will enter judgment in favor of the FDIC.

IT IS SO ORDERED.

DATED: March _28_, 2010                _____
                                        Percy Anderson
                                        UNITED STATES DISTRICT JUDGE